THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>   v.<br><br>SHANTE BROADY,<br><br>               Defendant. | CASE NO. CR25-0077-JCC<br><br>ORDER |

       This matter comes before the Court on Defendant's motions to suppress (Dkt. Nos. 54, 56), along with the Government's motions to file an overlength brief (Dkt. No. 70) and to strike (Dkt. No. 75). Having thoroughly considered the briefing and relevant record, and finding an evidentiary hearing unnecessary, the Court GRANTS in part Defendant's motion to suppress as to custodial statements following invocation of the right to counsel (Dkt. No. 54) along with the Government's motion for an overlength brief (Dkt. No. 70) but DENIES all remaining motions (Dkt. Nos. 56, 75) as explained herein.

       Defendant is charged by superseding indictment with human trafficking and transportation, along with unlawful possession of a firearm. (Dkt. No. 47.) At issue here are events which transpired in the early morning hours of April 11, 2025. On that date, the Federal Bureau of Investigation ("FBI") took Defendant into custody following a raid of Defendant's place of abode. (*See* Dkt. Nos. 66-2, 66-3, 69-1.) The resulting search produced evidence that

1  Defendant now seeks to suppress. (*See* Dkt. No. 56.) In opposing, the Government moves to
2  strike arguments Defendant allegedly raises for the first time in reply. (*See* Dkt. No. 75.)
3  Defendant also seeks to suppress statements made while subject to custodial interrogation
4  occurring shortly after the raid, arguing that those statements may have been involuntary (thus
5  warranting an evidentiary hearing) and, regardless, they followed Defendant's affirmative
6  invocation of his right to counsel yet were outside the presence of counsel. (*See* Dkt. No. 54.)

## CUSTODIAL STATEMENTS

Turning first to the interrogation at issue: it occurred in two stages, the first being shortly after the FBI SWAT team's entry into Defendant's residence (and his apprehension). (*See* Dkt. Nos. 69-1 at 1–3.)[1] Defendant was then transferred to the custody of FBI Special Agents Owen Reese and Anne Borgertpoepping, who placed Defendant in Special Agent Reese's vehicle for questioning. (*See id.* at 2.) The first interview lasted approximately an hour and 23 minutes.[2] (*See* Dkt. No. 69-3.) The second interview occurred less than an hour later and lasted just a few minutes.[3] (*See* Dkt. Nos. 69-1 at 2, No. 69-4.)

Shortly after the first interview began, at approximately the 7:45 mark, Defendant said that he wanted to "talk to a lawyer or something." (Dkt. No. 69-3.) In response, Special Agents Reese and Borgertpoepping continued to interrogate Defendant, without interruption, for about another hour. (*See id.*) Then, following a bathroom and cigarette break, the agents conducted a

---

[1] In addition to Special Agent Reese's declaration as to the events at issue (Dkt. No. 69-1), the Government made a notice of physical filing (Dkt. No. 68) corresponding to a thumb drive associated with exhibits 3 and 4 to the Government's brief in opposition to Defendant's motion. (*See* Dkt. Nos. 69-3, 69-4.) Those exhibits represent a 1:23:44 audio recording and 5:50 audio recording of the interviews, both of which are contained on the thumb drive. The Court reviewed the contents of each in their entirety.

[2] Before commencing the interview, the agents advised Defendant of his *Miranda* rights verbally and in writing. (*See* Dkt. No. 69-1 at 2); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Initially, Defendant verbally waived those rights (he could not physically sign a waiver as he was handcuffed at the time). (*See* Dkt. No. 69-1 at 2.)

[3] Defendant was re-*mirandized* for the second interview, and this time signed a waiver. (Dkt. No. 69-2.)

1 second interview, although only for a few more minutes. (Dkt. No. 69-4.) Defendant moves to suppress the statements made (from both interviews) following his invocation of a right to counsel during the first interview. (Dkt. No. 54 at 4–6.) Defendant also moves for a voluntariness hearing as to all statements made during the interviews. (*Id.*)

In *Miranda*, 384 U.S. at 444, the Supreme Court "concluded that in the context of 'custodial interrogation' certain procedural safeguards are necessary to protect a defendant's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination." *Cox v. Del Papa*, 542 F.3d 669, 675 (9th Cir. 2008) (*quoting Rhode Island v. Innis*, 446 U.S. 291, 297 (1980)). Similar principles apply to the Sixth Amendment right to counsel. *Michigan v. Jackson*, 475 U.S. 625, 632 (1986), *abrogated on other grounds by Montejo v. Louisiana*, 556 U.S. 778 (2009); *United States. v. Hines*, 963 F.2d 255, 256 (9th Cir. 1992). This includes that any statements made must be voluntary and that, once the right to counsel is invoked, interrogation must end. *Robinson v. Borg*, 918 F.2d 1387, 1390 (9th Cir. 1990) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)).

As a threshold matter, the Court notes that there is no need for a voluntariness hearing here. It is not necessary when the moving papers and supporting declarations and exhibits show no relevant contested issues of fact. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Such is the case here. It is Defendant's burden to establish that such a hearing is required. *United States v. Ramirez-Garcia*, 269 F.3d 945, 947 (9th Cir. 2001). And Defendant fails to meet this burden. The Government produced Special Agent Reese's declaration, along with Defendant's signed *Miranda* waiver and the full audio recording of the interrogations. (Dkt. Nos. 69-1, 69-2, 69-3, 69-4.) Whereas Defendant presented the court without countervailing evidence or even *allegations* putting voluntariness at issue. (*See generally* Dkt. Nos. 54, 73.) And based on Government's evidence, the Court FINDS that the statements made during both interviews were voluntary.

But the evidence is more problematic for the Government as to Defendant's invocation of

his right to counsel.

In an effort to address these shortcomings, the Government argues that Defendant's invocation was ambiguous and, thus, did not represent an affirmative request for counsel. (*See* Dkt. No. 69 at 8–11) (citing *Norman v. Ducharme*, 871 F.2d 1483, 1486 (9th Cir. 1989). Alternatively, says the Government, even if the invocation was unambiguous, Defendant later attempted to reengage in conversation with the agents (even signing a *Miranda* waiver prior to the second interview). (*See* Dkt. No. 69 at 11–15) (citing *United States v. Michaud*, 268 F.3d 728, 737 (9th Cir. 2001). The Court is not convinced that this effectively withdrew Defendant's prior invocation

The original invocation was, indeed, unambiguous. Defendant clearly indicated a desire to speak with counsel and did so in response to the agents' request for the passwords to his electronic devices, suggesting a desire for legal advice on the issue. (*See* Dkt. No. 69-3.)[4] But the agents continued to inquire. Admittedly, a few minutes later, they asked Defendant whether he "wanted to speak with us or not." (*See* Dkt. No. 69-3 at 8:55.) But when they received no response, they simply continued their inquiry. (*See generally* Dkt. Nos. 69-3, 69-4.) Put simply, at no point during either interview did the agents seek clarification as to Defendant's desire to speak to counsel. (*See id*.) For this reason, amongst other reasons, the Court finds that his invocation was sufficiently clear.

Nor can the Court find that, based on the questions Defendant later posed to the agents, that Defendant withdrew his invocation. This is, in part, because the agents *never ceased interrogating Defendant*, other than for a brief bathroom and cigarette break. To be clear: this case does not compare to those the Government relies on, where in those instances officers

---

[4] Moreover, even if the invocation had been ambiguous, best practice would have been for the agents to clarify Defendant's intent. *See Davis v. United States*, 512 U.S. 452, 462 (1994) ("entirely proper . . . to clarify whether [defendant] in fact wanted a lawyer."); *see also United States v. Rodriguez*, 518 F.3d 1072, 1077 (9th Cir. 2008) (discussing Ninth Circuit's clarification rule).

indicated in no uncertain terms that they would not communicate with the defendant so long as he seeks the advice of counsel and/or there was a significant temporal gap between invocation and more questioning. (*See* Dkt. No. 69 at 12–13) (citing *Edwards*, 451 U.S. at 484–85; *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983); *Michaud*, 268 F.3d at 737).[5] Again, no such thing happened here. (*See* Dkt. Nos. 69-3, 69-4.)

Thus, the Court FINDS that (a) Defendant's statements were indeed voluntary but that (b) all statements *following Defendant's invocation of his right to counsel*, at roughly the 7:45 mark in the first interview, violated Defendant's Sixth Amendment rights and shall be excluded.

### FRUITS OF THE SEARCH

To gain access to Defendant's residence, the SWAT Team intended to input an entry code on the keypad to Defendant's front door—they had received the code from someone who briefly resided in the home. (*See* Dkt. No. 66-1 at 2.) The team preferred this approach to forcing the door open. (*Id.*) Before attempting entry, though, a team member touched a button on the top of the keypad, which illuminated the entire pad. (*See* Dkt. Nos. 66-2, 66-3.) They then loudly knocked and announced "FBI search warrant come to the door" before again knocking loudly and announcing "FBI search warrant come to the door." (*Id.*) Shortly thereafter, and for the first time, they then attempted to input the passcode into the keypad. (*Id.*)

It took a few attempts before the door partly opened. (*Id.*) Throughout these attempts, team members continued to loudly exclaim that they had a warrant and that Defendant should come to the door. (*Id.*) After correctly inputting the code (after a few failed attempts), the door briefly opened. (*Id.*) From their position outside the unit, some team members could see

---

[5] For example, in *Bradshaw*, when the defendant inquired after invocation, saying "what is going to happen to me now," the officer responded that "[y]ou do not have to talk to me. You have requested an attorney and I don't want you talking to me unless you desire . . . since you have requested an attorney." 462 U.S. at 1042. Whereas in *Michaud*, there was a two-day gap between invocation and the next interrogation. 268 F.3d at 734. And notably, in *Edwards*, unlike here, the officers "ceased interrogation" after invocation, next interrogated the defendant a day later, yet this *still* violated Defendant's Sixth Amendment rights. 451 U.S. at 487.

ORDER
CR25-0077-JCC
PAGE - 5

Defendant retreating to the bedroom. (*See* Dkt. No. 66-1 at 1–4.) The door then shut again. (*See* Dkt. Nos. 66-2, 66-3.) At this point, the team kicked open the door. (*Id.*) They again repeatedly ordered Defendant to come to the door. (*Id.*) When he failed to do so, eventually they entered the residence. (*Id.*) The whole process, from the first knock and announce to entry, took about one-and-a-half minutes. (*Id.*)

In moving to suppress, Defendant first alleged that SWAT team members failed to knock and announce *before* attempting to input the code into the keypad. (*See* Dkt. No. 56 at 1–3.) Based on this, they moved to suppress all evidence obtained from the resulting search in accordance with *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). The principle requires that, to protect Fourth Amendment rights, law enforcement must generally knock and announce prior to entering a private home, absent extenuating circumstances. (*Id.*) The Government responded to the motion with a declaration from one of the SWAT team members (Dkt. No. 66-1) and video recordings of the incident from two SWAT team members' body-worn cameras (Dkt. No. 66-2, 66-3).[6] The videos clearly show that the team did, which was indeed to first knock and announce *before* attempting to input the key code.

Defendant then argued on reply that simply *touching* the keypad to illuminate it amounted to "the first step" in the process of gaining entry and that any knock and announce must precede that step. (*See* Dkt. No. 74 at 1–3.) The Government moves to strike this argument, noting that it was not contained within Defendant's motion. (*See* Dkt. No. 75.) It is a point well taken, but because the Court finds that the initial touch of the keypad *was not* a necessary step in unlocking the door—the agent describes it as an effort to "familiarize myself with the door and its keypad to ensure that I could open it when directed to by my team leader," (Dkt. No. 66-1 at 3)—Defendant's argument is unavailing and the motion to strike (Dkt. No. 75) is moot.

---

[6] The Government made a notice of physical filing (Dkt. No. 67), which corresponds to a thumb drive associated with exhibits 2 and 3 to the Government's brief in opposition to Defendant's motion. (*See* Dkt. Nos. 66-2, 66-3.) Those exhibits represent video recordings contained on the thumb drive. The Court reviewed the contents of each in their entirety.

This argument—that simply touching the pad as an initial step in later entering the code is enough to trigger a knock and announce requirement—is not supported by *any* on-point cited authority. All the referenced cases are either easily distinguishable or do not stand for Defendant's proposition. (*See* Dkt. No. 74 at 2–3) (citing *United States v. Combs*, 394 F.3d 739, 744 (9th Cir. 2004); *United States v. Bynum*, 362 F.3d 574, 583 (9th Cir. 2004); *United States v. Peterson*, 353 F.3d 1045, 1049 (9th Cir. 2003); *United States v. Banks*, 540 U.S. 31, 42 (2003)). Nor does this Court find the argument compelling, in light of the facts as established here by the video recordings. For this reason, the Court dismisses this argument.

Defendant also contends that the amount of time between the teams' first knock and announce and the eventual entry was unreasonable. (*See* Dkt. No. 74 at 2–4.) This is an argument seemingly also made for the first time on reply. (*Id.*) Regardless, it is of no merit. Admittedly, the SWAT team waited just a few seconds after knocking and announcing *twice* before first attempting to open the door. (*See* Dkt. Nos. 66-2, 66-3.) But once the door was open, they repeatedly directed Defendant to come out. (*Id.*) And only once it was clear that he would not, did they enter, almost two minutes later. (*Id.*) And all the while, they were aware that Defendant possessed a firearm somewhere within the unit and had retreated deeper into the unit upon the team's initial contact. (Dkt. No. 66-1 at 3.) These exigent circumstances required quick action.

Fundamentally, the knock and announce rule is part of the reasonableness inquiry that makes up Fourth Amendment jurisprudence. *See Wilson v. Arkansas*, 514 U.S. 927, 930 (1995). It is not absolute or inflexible. How it is to be applied depends on the totality of the circumstances. It gives way, for instance, when it would be "dangerous or futile" or would "allow[] the destruction of evidence." *United States v. Banks*, 540 U.S. 31, 36 (2003). Again, in this instance, having reviewed videos of the incident from two separate body worn cameras, the Court can say with confidence that the SWAT team's entry into Defendant's abode did not violate the Fourth Amendment.

Accordingly, for the reasons described above, the Court GRANTS Defendant's motion to

suppress certain custodial statements (Dkt. No. 54), GRANTS the Government's motion to file an overlength brief (Dkt. No. 70),[7] DENIES Defendant's motion to suppress the fruits of the search of Defendant's abode (Dkt. No. 56), and DENIES as moot the Government's motion to strike (Dkt. No. 75).

DATED this 18th day of December 2025.

*[signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[7] The Court finds good cause for the additional pages the Government seeks.